SUPERIOR COURT 
 
 COMMONWEALTH VS. HECTOR PINEIRO

 
 Docket:
 2016-474
 
 
 Dates:
 July 30, 2019
 
 
 Present:
 /s/Paul D. Wilson Justice of the Superior Court
 
 
 County:
 WORCESTER, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS [BASED ON THE] SECOND AMENDMENT 

 
 

 Defendant is indicted for possession of a dangerous weapon, in violation of G.L. c. 269, § 10(b). He argues that G.L. c. 269, § 10(b) impermissibly infringes on his constitutional right to bear arms, and thus moves for dismissal of the possession charge. The Commonwealth contends dismissal is inappropriate because G.L. c. 269, sec. 10(b) is constitutional, as it proscribes possession of a type of weapon outside the scope of Defendant's asserted Second Amendment right. For the reasons set out below, I will deny Defendant's motion to dismiss.
Background
 Police stopped Defendant because he was driving erratically on a public highway at a high rate of speed. Their subsequent search of Defendant's vehicle uncovered two knives, which Worcester Police Officer Roberge testified before the grand jury were "spring-assisted" and "spring-loaded."
 Defendant was then indicted for violating G.L. c. 269, § 10(b). That statute criminalizes possession, either on the defendant's person or "under his control in a vehicle," of certain specifically-identified weapons, many of which are knives. Among the knives specifically
 -1-
identified in the statute is "a switch knife, or any knife having an automatic spring release device by which the blade is released from the handle."[1]
Analysis
 The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme Court has ruled that the Second Amendment right to bear arms protects the rights of individuals, not just "Militia[s]." District of Columbia v. Heller, 554 U.S. 570 (2008). The Second Amendment right to bear arms applies against the states as well as the federal government. McDonald v. City of Chicago, 561 U.S. 742, 784 (incorporating the Second Amendment into the Fourteenth Amendment).
 The "Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." Caetano v. Massachusetts, 136 S. Ct. 1027, 1028 (2016). An arm is "bearable" if it can be carried. Heller, 554 U.S. at 584. The "arms" whose possession is protected by the Second Amendment include: (1) "weapons of offence, or armour of defence:" and (2) "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." Id. at 581, quoting two dictionaries published in the 1770s, including that of Samuel Johnson. See also Ramirez v. Commonwealth, 479 Mass. 331, 334-35 (2018) (concluding stun guns constitute arms because they are "typically possessed by law-abiding citizens for lawful purposes"). Further, "arms" need not be "specifically designed for military use." Heller, 554 U.S. at 581.
---------------------------
 
[1] Section 10(b) also separately criminalizes possession, when being arrested on a warrant or while committing a breach of the peace, of "a billy or other dangerous weapon other than those herein mentioned' (emphasis added). This second provision of section 10(b) is irrelevant to today's motion.
 -2-
 Although "arms" are broadly defined, the individual right to possess them extends only to certain types. Id. at 622-26. In Heller, the Supreme Court made clear that "the right secured by the Second Amendment is not unlimited," and "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626. For example, the right to keep and carry arms does not protect the possession of arms "not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." Id. at 625. Writing more generally, the Court elaborated that Second Amendment rights were subject to the "important limitation" that a state could constitutionally prohibit the carrying of "dangerous and unusual weapons." Id. at 627.
 In the wake of Heller, in rejecting a Second Amendment attack on a conviction for illegally possessing a firearm, the Supreme Judicial Court quoted Heller 's teaching that prohibiting the carrying of "dangerous and unusual weapons" does not violate the Second Amendment. Commonwealth v. Powell, 459 Mass. 572, 584 (2011). Powell is not directly relevant to today's case, because the weapon at issue in Powell, a "revolver," id. at 576, is not among the "dangerous and unusual weapons" whose possession is prohibited by G.L. c. 269, § 10(b). Nonetheless, the court's quotation of this language from Heller provides a powerful indication that the Supreme Judicial Court would not strike down Section 10(b) as unconstitutional, as Defendant here demands.
 The Commonwealth argues that G.L. c. 269, § 10(b) is a constitutionally-acceptable prohibition on the carrying of "dangerous and unusual weapons," including spring-loaded knives. In at least two unpublished decisions under its Rule 1:28, the Appeals Court has agreed with the Commonwealth's position. In Commonwealth v. Fox, 94 Mass. App. Ct. 1108, 2018 Mass. App. Unpub. LEXIS 809 (2018), an Appeals Court panel ruled that "the Legislature
 -3-
reasonably deemed knives with opening mechanisms designed to allow easy access in a violent confrontation" -- that is, the very type of knife at issue in today's case — to be knives "not designed for a lawful purpose." Id. at *2-3. Consequently, the Second Amendment did not bar the legislature from making their possession illegal in Section 10(b), because that statute bans possession only of certain types of knives "primarily designed for stabbing human beings or for other unlawful objectives," rather than those knives "designed for a lawful purpose." Id. at *4. Earlier, in Commonwealth v. Alem A., 81 Mass. App. Ct. 1101, 2011 Mass. App. Unpub. LEXIS 1371 (2011), an Appeals Court panel found that a Second Amendment challenge to an arrest for carrying a knife whose possession was banned under Section 10(b) "requires little discussion." Id. at *3. The court noted that Heller makes clear that state law can criminalize "the carrying of dangerous and unusual weapons." Id., quoting Heller, 554 U.S. at 626. That is what the state legislature did in enacting G.L. c. 269, § 10(b), the Alem A. court ruled, and, `[t]herefore, the juvenile's conduct [was] not protected by the Second Amendment." Alem A., 81 Mass. App. Ct. at *4.
 Like the Fox court, 94 Mass. App. Ct. 1104 at *3, I will assume that knives are "arms" whose possession is, in the ordinary case, protected by the Second Amendment. Defendant's argument fails, nevertheless, because the specific subset of knives expressly proscribed by G.L. c. 269, sec. 10(b) are "dangerous and unusual" in the eyes of the state legislature.
 In fact, Defendant actually appears to agree with this final point. He argues that his spring-loaded knife "falls into the class of 'arms' protected by the Second Amendment" precisely because "the knife was not among the weapons prohibited by G.L. c. 269, sec 10 (b)." Def.'s Mem. Supp. Motion to Dismiss at 8 (emphasis added). Defendant's premise is wrong; it
 -4-
could not be clearer that the statute specifically bans possession of "a switch knife, or any knife having an automatic spring release device by which the blade is released from the handle."
 In summary, Defendant is alleged to have been carrying a "dangerous and unusual weapon," whose possession is specifically banned by state law. That law does not violate the Second Amendment.
Conclusion and Order
 Defendant's "Motion to Dismiss Second Amendment" is DENIED.
@/s/Paul D. Wilson Justice of the Superior Court
@July 30, 2019
 -5-
xxz